IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

        Plaintiff/Counter Defendant,
vs.                                                                   No. CIV  11-901 LH/LFG

RONALD B. PORATH and MARZELLA
J. PORATH,

        Defendants/Counter Claimants,

BATTLE WOLF, A pure trust, and
WELLS FARGO & COMPANY,

        Defendants.

===================================
WELLS FARGO BANK, N.A.,
Successor by merger to Wells Fargo
Home Mortgage, Inc, fka Norwest
Mortgage, Inc.,

        Plaintiff,
vs.                                                                    No. CIV  11-1145 MV/LFG

RONALD B. PORATH, MARZELLA
J. PORATH, Trustees of Battle Wolf;
and UNITED STATES OF AMERICA,
by and through the Internal Revenue Service,

        Defendants.

## NUNC PRO TUNC ORDER IMPOSING SANCTIONS

THIS MATTER is before the Court following its review of the Defendants' ("Poraths") Response [Doc 36] to Show Cause Order issued by the Court [Doc. 33].[1]  The Court ordered Poraths to show cause, if any they had, why Fed. R. Civ. P. 16 sanctions should not be imposed as a result of their failure to appear for a Court-ordered Rule 16 conference.  They were also directed to show

---

[1] While Poraths filed a written response, they failed to submit a supporting affidavit under oath or affirmation as required by the Court. [Doc. 33 at 3].  Accordingly, the response is deficient.

cause why costs should not be imposed against them so as to reimburse opposing parties' costs incurred as a result of the aborted conference.

Poraths state that they "challenged the competence of the Court and its corresponding jurisdiction . . . ," [Doc. 36 at 1] and believe that the undersigned Magistrate Judge, who ordered them to appear for a Rule 16 conference "has engaged in a course of conduct which subjects Poraths to conditions of involuntary servitude in support of the peonage conditions already being imposed upon them." [Id. at 2].

Poraths did not appear for the Rule 16 conference because they "do not accept the jurisdiction of the Court." [Id.]  They have reported "criminal activity active within this honorable Court" to the United States Attorney for the District of New Mexico, and further state that the matter will be acted upon by the United States Attorney General and, subsequently, the President of the United States.  They allege that this "entire matter is no longer under their control." [Id., ¶ 2].

No other justification is offered for their non-appearance.  In their earlier letter to the Clerk of Court indicating that they would not appear, they intimated that they had some unspecified travel plans.  In their current Response, no information is presented which indicates they were unable to attend due to illness, schedule conflicts, or the unspecified travel plans.  Further, Poraths offer no argument or authority as to why costs and fees should not be imposed against them to reimburse opposing parties.

## **Analysis**

In Coleman v. Commissioner of Internal Revenue, 791 F.2d 68 (7th Cir. 1986), a tax protester case, Circuit Judge Easterbrook wrote:

> Some people believe with great fervor preposterous things that just happen to coincide with their self-interests.  "Tax protesters" have convinced themselves that wages are not income, that only gold is money, that the 16th Amendment is unconstitutional, and so on.

2

> These beliefs all lead–so tax protesters think–to the elimination of their obligation to pay taxes. The government may not prohibit the holding of these beliefs, but it may penalize people who act on them.

Id. at 69.

Such is the situation here. Poraths are free to believe whatever they choose. However, in the exercise of their beliefs, however misguided, they are not free to disobey the laws of this land or the orders and directives of the Court.

Poraths refused to attend a Court-ordered conference, contending that this Court lacks jurisdiction. That argument was soundly rejected by the Court. [Doc. 34]. The Honorable C. LeRoy Hansen specifically found:

> The Court has subject-matter jurisdiction over the United States' Complaint pursuant to 26 U.S.C. § 7402, and 28 U.S.C. §§ 1340 and 1345 because this action arises under federal tax law, and the United States is the plaintiff. The Court has jurisdiction over Wells Fargo's removed case under 28 U.S.C. § 1444, which grants authority to the United States to remove a state-court suit to federal court where the United States is named as a defendant in an action brought under 28 U.S.C. § 2410.

[Doc. 34 at 5].

The Court obtained and is exercising *in personam* jurisdiction over the parties Porath, and it has subject matter jurisdiction over this lawsuit. Thus, the Court rejects Poraths' excuse that they did not attend the hearing because the Court lacks jurisdiction. So, too, Poraths' statement that they decline to accept this Court's jurisdiction or to participate in the litigation because doing so subjects them to conditions of servitude and peonage, was also rejected as "nonsensical." [*See*, Doc. 34 at 5].

In this case, it is clear that sanctions should be imposed. Poraths, without legitimate justification, failed to appear for a Court-ordered conference. Their failure to appear was based on misguided beliefs and unsupported contention. Prior to the Rule 16 conference, Poraths did not

3

request that the Court vacate or reschedule due to any justifiable reason, but, instead, acting on their belief that this Court lacked jurisdiction, was engaging in "peonage," and for other equally frivolous reasons, failed to appear.  Their decision interfered with the Court's docket, resulted in the Court having to vacate the conference, and caused increased costs and fees for opposing parties.  Sanctions are appropriate.

In determining the propriety of sanctions, the Court follows the dictates of Ehrenhaus v. Reynolds, 965 F.2d 916, 920 (10th Cir. 1992).  In Ehrenhaus, as in the earlier Meade v. Grubbs, 841 F.2d 1512 (10th Cir. 1988), the Tenth Circuit Court of Appeals outlined a number of factors a trial court should consider in determining the appropriateness of a just sanction.  Those factors include:  (1) the degree of actual prejudice to the opposing party; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would likely occur as a sanction for non-compliance; and, (5) the efficacy of lesser sanctions.  With these factors in mind, the Court determines the appropriateness of the sanction in this case.

### Degree of Actual Prejudice to Opposing Party

The Civil Justice Reform Act ("CJRA"), 28 U.S.C. § 471 *et seq*., seeks to attain two goals: (1) the reduction of costs of litigation; and (2) the expeditious resolution of litigation.  Poraths' refusal to comply with the Court's directive and participate in the status conference means that both of these CJRA goals were, in part, thwarted.

Opposing parties will now face more costs and delay in the resolution of this case.  Counsel for the United States and Wells Fargo were compelled to prepare for the conference and clear their work schedules to appear at the Court's Rule 16 conference.  Their clients incurred actual expenses, and counsel lost productive time that could have been devoted to other matters.

When the Court vacated the conference, all the preparation and attendance time was lost, and those attorneys will now have to again clear their calendars, prepare for, and attend a new Rule 16 conference. This increased cost results in actual prejudice to opposing parties.

At these conferences, the Court explores negotiated resolution of disputes. Thus, without the conference, an opportunity to attempt to resolve the case without the necessity of a trial was lost. The failed conference means that the final disposition of this case will now be extended.

The Court concludes that both Wells Fargo and the United States Internal Revenue Service were prejudiced as a result of Poraths' non-compliance.

### Interference With the Judicial Process

Just as Defendants were required to clear their calendars and be available for the scheduled conference, so, too, the Court set a hearing and devoted time to this case which could have been used to attend to other matters on its docket. When the Court was compelled to vacate the Rule 16, it lost that available time, and there is no way to replace it or set another matter in that one-hour time slot. Now it is necessary that the Court reschedule the Rule 16 conference. Moreover, their failure to appear added to the Court's workload in that an order to show cause became necessary as did the time it took to review Poraths' response and prepare the present analysis. Thus, precious judicial resources were squandered by Poraths' refusal to comply with the Court's directive.

Poraths' failure to comply interfered with the Court's case management plan in that the traditional Rule 16 status conference, which is used for a multitude of purposes (*see* Doc. 33), could not be conducted. Poraths' refusal to attend interfered with the judicial process.

### Culpability of the Litigants

In a case where a failure to comply with a court directive is the fault of a litigant's attorney, then the attorney is the proper person to suffer a sanction. In re Sanction of Baker, 744 F.2d 1438,

1442 (10th Cir. 1984) (if the fault lies with the attorneys, that is where the impact of the sanction should be lodged), *cert. denied*, 471 U.S. 1014 (1985); *see also* M.E.N. Co. v. Control Fluidics, Inc., 834 F.2d 869, 873 (10th Cir. 1987).

In this case, Poraths are *pro se* litigants. The refusal to attend the conference falls squarely on their shoulders. Thus, they themselves bear the culpability for non-compliance and they should bear the brunt of the sanctions.

## Advanced Warning

Before a court may dismiss a case or enter judgment against the recalcitrant party, it should have given a prior warning of the potential consequence. *See, e.g.,* Willner v. Univ. of Kansas, 848 F.2d 1023, 1030 (10th Cir. 1988), *cert. denied*, 488 U.S. 1031 (1989). In the absence of a warning, a party may expect a lesser sanction. In this case, the Court did not give a prior warning that the failure to comply with a court order or directive could result in severe sanctions being entered against the culpable party. Therefore, entry of a judgment against them would be too severe in the absence of a prior warning.

## Efficacy of Lesser Sanctions

While the Court determines that a sanction is appropriate, the lesser sanction of imposition of a financial penalty should suffice. Wells Fargo paid their attorney a flat fee of $250 to prepare for and attend the failed Rule 16 conference. [Doc. 35]. Similarly, the Department of Justice incurred costs of $139.76. [Doc. 38]. The Court determines that it would be unfair to require that Wells Fargo or the United States suffer the financial loss resulting from the vacated conference, which was caused by Poraths' misguided decisions. It is Poraths who should bear the costs of their folly. While the attorney fees incurred by the respective parties are unequal, both parties suffered the same harm, and the Court determines that each should receive the same amount–$250.

**Conclusion**

In upholding sanctions on *pro se* tax protesters in Coleman v. Commissioner of Internal Revenue, Judge Eastbrook noted that imposition of sanctions is one way of compelling compliance with the nation's laws.

> People who wish to express displeasure with taxes must choose other forums, and there are many available. Taxes are onerous, no doubt, and the size of the tax burden gives people reason to hope that they can escape payment. Self-interest calls forth obtuseness. An obtuse belief–even if sincerely held–is no refuge, no warrant for imposing delay on the legal system and costs on one's adversaries. The more costly obtuseness becomes, the less there will be.

Coleman, 791 F.2d at 72.

The Court determines that Poraths' obtuseness should result in a total sanction of $500, payable in the amount of $250 to Wells Fargo and $250 to the Department of Justice Tax Division. Poraths are directed to pay this sanction within ten days of entry of this Order and to file a certificate of compliance with the Court.[2] Failure to pay the sanction unless indigency is established can result in the imposition of more severe sanctions, including the entry of a judgment against them. *See* Ehrenhaus v. Reynolds.

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

---

[2] To ensure collectability, the Court will enter a partial judgment representing sanctions imposed against Poraths in the amount of $500.