IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

                    Plaintiff/Counter Defendant,

    vs.

RONALD B. PORATH, MARZELLA
J. PORATH,

                    Defendants/Counter Claimants,

BATTLE WOLF, A pure trust, and
WELLS FARGO & COMPANY,

                    Defendants.

No. CIV  11-901 LH/LFG
(Consolidated for all purposes
With CIV 11-1145 LH/LFG)

================================

WELLS FARGO BANK, N.A.,
Successor by merger to Wells Fargo
Home Mortgage, Inc, fka Norwest
Mortgage, Inc.,

                    Plaintiff,

    vs.

RONALD B. PORATH, MARZELLA
J. PORATH, Trustees of Battle Wolf;
and UNITED STATES OF AMERICA,
by and through the Internal Revenue Service,

                    Defendants.

No. CIV  11-1145 LH/LFG

## **REPORT AND RECOMMENDATION**[1]

On June 25, 2012, the Court entered an Order setting a Fed. R. Civ. P. 16 status conference

for July 12, 2012 [Doc. 45].  In the Court's Order, it also issued a directive to the parties advising

---

[1]Within fourteen (14) days after a party is served with a copy of this analysis and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendation.  A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the analysis and recommendation.  If no objections are filed, no appellate review will be allowed.  *See, e.g.*, Wirsching v. Colorado, 360 F.3d 1191, 1197 (10th Cir. 2004) ("firm waiver" rule followed in Tenth Circuit holds that a party who fails to object to magistrate judge's findings and recommendations in timely manner waives appellate review of both factual and legal questions).

that their participation in the Rule 16 conference is mandatory, and that failure to appear for the conference could result in the imposition of Rule 16 sanctions, including "entry of a default judgment, striking pleadings, or entry of a dispositive ruling." [Doc. 45, at 2].  The Court perceived that this directive was necessary by virtue of the Porath Defendants' earlier statement [Doc. 36] advising that they would no longer participate in this litigation.

On the date, time and place of the scheduled hearing, the United States was present through attorney Christopher R. Egan, and Wells Fargo was present through attorney Elizabeth M. Dranttel. The Poraths, true to their word, failed to appear.  Prior to this failure, the Poraths did not contact the Court to advise of any scheduling conflict, illness or other legitimate impediment to their attendance. For the second time, due to their failure to appear for the hearing, the Court was unable to conduct the Rule 16 status conference.

The Poraths' refusal to participate in litigation is based on some bizarre and misguided beliefs that there is a conspiracy afoot in the federal court system to engage in an insurrection or national rebellion; that federal judges now occupy their position under "false pretenses," and that this judicial insurrection now requires the intervention of the President of the United States, the Congress, and the Department of Justice.  [Docs. 42, 46, 47].  In addition to allegedly holding positions under false pretenses, Poraths charge that certain federal judges have not taken an oath or posted a bond, and those alleged failures rob the federal court of jurisdiction.[2]  Nowhere do the Poraths explain how a performance bond obligation applicable to State officials has any bearing on the federal judiciary.  They also contend that the federal judiciary "hold the Porath [sic] criminally

---

[2]Curiously, the Poraths do not allege that either the trial judge or the referral magistrate judge in this case have not taken whatever oath the Poraths believe indispensable.  Rather, they accuse the district's Chief Judge, the Honorable Bruce D. Black, the Chief Judge designee, the Honorable M. Christina Armijo, and Judges Robert Brack and William Johnson, of not having posted a performance bond while serving as members of the state judiciary. [*See, e.g.*, Doc. 47, Attachment 1].

under conditions of peonage." [Doc. 46, at 3.]  These and other arguments raised by the Poraths are rejected as absurd, frivolous, and nonsensical.

The Poraths are free to subscribe to any theory or hold dear any belief.  That right, however, does not entitle them to ignore the process and authority of a federal court handling a case in which it has proper subject matter jurisdiction and *in personam* jurisdiction over the parties.  The Poraths' refusal to attend court proceedings is not only in contumacious disregard of a specific order and directive of the Court, but is also conduct that warrants imposition of Rule 16 sanctions.

Pursuant to applicable circuit law, before the Court can impose severe sanctions, it must conduct an appropriate analysis under Meade v. Grubbs, 841 F.2d 1512, 1520-21 (10th Cir. 1988) and Ehrenhaus v. Reynolds, 965 F.2d 916, 920 (10th Cir. 1992).  Thus, in accord with its responsibility, the Court discusses each of the Ehrenhaus factors.

### Prejudice to Opposing Party

The Federal Rules of Civil Procedure, which govern the practice and procedure of all civil actions in United States District Courts "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  This Rule works hand-in-glove with the two-pronged goals of the Civil Justice Reform Act, 28 U.S.C. § 471, *et seq.*  Thus, the parties, through litigation, are entitled to expect that courts will construe and administer the rules in a manner that achieves those goals, *i.e.,* the "just, speedy and inexpensive determination" of civil actions.

A second important rule in the Court's analysis is Fed. R. Civ. P. 16, which confers on the Court significant authority to conduct pretrial conferences, to handle the scheduling of cases, and to oversee case management.  Rule 16(a) provides,

> In any action, the court may order the attorneys and any unrepresented parties to appear for one or more pretrial conferences

3

for such purposes as:

(1)     expediting disposition of the action;

(2)     establishing early and continuing control so that the case will not be protracted because of lack of management;

(3)     discouraging wasteful pretrial activities;

(4)     improving the quality of the trial through more thorough preparation; and,

(5)     facilitating settlement.

To accomplish the overall goals of the rules of procedure and ensure that these consolidated cases proceed expeditiously, efficiently, and economically through the Court process, the Court relied on its authority under Rule 16 to compel the parties to attend various pretrial conferences to establish appropriate scheduling and management of these cases.

As is clear from the record, the Poraths failed to appear for an earlier Rule 16 status conference, and, as a result, the Court imposed sanctions. [Doc. 48].[3]  Due to that earlier failure, opposing parties, the United States and Wells Fargo, incurred costs and fees and faced increased delay as a result of the Poraths' recalcitrance. [*See* Docs. 35, 38.]

Notwithstanding the Poraths' refusal to appear, the Court again relied on its authority under Rule 16 to manage this litigation and set another Rule 16 conference to discuss the issues contemplated by Rule 16(a)(1)-(5). [Doc. 45].  For the second time, the Poraths failed to appear and the Court could not perform its case management functions as required by the Rules.  As a direct result of the Poraths' refusal to attend Court proceedings, opposing parties again lost time, and

---

[3]The Court's June 7, 2012 Order was inadvertently entered in the later consolidated case of No. CIV 11-1145 [Doc. 41], while initially omitted from the docket in No. CIV 11-901.  That clerical error was corrected.  The June 7, 2012 Order was entered *nunc pro tunc* on June 7, 2012 in No. CIV 11-901.  [Doc. 48]

incurred costs and fees.  Moreover, because of the Poraths' refusal to cooperate, opposing parties are unable to complete discovery, learn whether there is any evidence whatsoever to support the claims and/or defenses asserted by the Poraths, and explore alternatives to resolution short of trial. Thus, the United States and Wells Fargo are and continue to be prejudiced by the Poraths' failures.

### Interference with the Judicial Process

The Civil Justice Expense and Delay Reduction Plan ("Plan") governs the handling of civil actions in this district.  Pursuant to the Plan, cases are to be brought to a final conclusion within a specific amount of time, and the Court is required to conduct various conferences, including a Rule 16 settlement conference, in advance of the proposed trial date.

The Poraths' refusal to cooperate in this case significantly interferes with the Court's abilities to meet its obligations under the Plan.  Moreover, the Court has now on two occasions been compelled to vacate scheduled conferences because of the Poraths' failure to appear, and the time set aside to conduct the conference was lost.  The Poraths' refusal to abide by the obligation imposed on litigants by the federal rules results in bringing this litigation to a halt.

These failures prompted the Court to issue an Order to Show Cause, conduct a sanctions' review under Ehrenhaus v. Reynolds, and impose sanctions.  The Court was compelled to issue a new scheduling order and a directive to appear [Doc. 45], and, now, to conduct another sanctions' review.  Much more time was devoted to this case than would otherwise have been necessary had the Poraths fulfilled their obligations as litigants and cooperated with opposing counsel and the Court.

Intertwined with the prejudice suffered by the United States and Wells Fargo, the Poraths' refusal to participate significantly interferes with the judicial process and resulted in the waste of judicial resources.

5

**Culpability of the Litigants**

In Ehrenhaus, the court noted that when sanctions are warranted, they should be imposed on an appropriate party or representative responsible for the sanctionable conduct.  When the failure to comply with procedural rules, orders or directives of the Court is the fault of an attorney, it is the attorney who should suffer the consequences.  In re Sanction of Baker, 744 F.2d 1438, 1442 (10th Cir. 1984), *cert. denied,* 471 U.S. 1014 (1985); *see also* M.E.N. Co. v. Control Fluidics, Inc., 834 F.2d 869, 873 (10th Cir. 1987).  However, when the fault is that of a party, whether or not represented, it is then the party who suffers the consequence.  Id.

Here, the Poraths are unrepresented.  They have no one to blame for their situation other than themselves, and their refusal to comply with Court orders and directives comes as a result of their personal beliefs, determinations and decisions.  Thus, it is the Poraths themselves who must suffer the consequences of sanctions.

**Advanced Warning of Possible Dismissal/Judgment**

The Court must consider whether it gave a prior warning that a lawsuit may be dismissed or that a default judgment would be entered.  *See, e.g.*, Willner v. Univ. of Kansas, 848 F.2d 1023, 1030 (10th Cir. 1988), *cert. denied*, 488 U.S. 1031 (1989).  It would be unfair if a party was taken by surprise with the severity of a sanction in the absence of any prior warning.

Here, the Court gave such warnings on more than one occasion.  In its earlier Order Imposing Sanction [Doc. 48], it indicated that failure to comply with the Court's directive "can result in the imposition of more severe sanctions, including the entry of a default judgment . . . ." [Id. at 7].  Then again, on June 25, 2012, in the Court's Order Directing Participation at Hearing [Doc. 45], the Court referred to Ehrenhaus v. Reynolds and specifically noted that failure to attend the Rule 16 conference could result in the imposition of additional Rule 16 sanctions, "including

entry of a default judgment, striking pleadings, or entry of a dispositive ruling." [Id. at 2].

Thus, Poraths were specifically put on notice that entry of a default judgment against them and striking of their claims or defenses were distinct possibilities. Accordingly, the Poraths were previously warned that sanctions could include imposition of the most serious sanctions.

### Efficacy of Lesser Sanctions

A court should not recommend or impose an ultimate sanction if a lesser sanction would suffice to compel a party's compliance. Thus, it would be inappropriate to dismiss a case or enter a default judgment if another, lesser sanction, would suffice to serve the intended purpose of seeking compliance. Here, however, the Court conducted a sanctions analysis, imposed sanctions and warned the Poraths. [Doc. 45, 48]. There is simply no benefit to be accrued in ordering a new financial penalty or announcing a new warning as lesser sanctions proved ineffective.

A party may not simply withdraw from participation and believe that the withdrawal brings an end to litigation. In this case, this litigation is going forward, with or without the Poraths' consent, approval or cooperation. The Court has no expectation that anything it will do or say can result in securing the Poraths' future cooperation. The Poraths believe the Court is without authority and is an illegal institution operated by judicial officers who have conspired to participate in an insurrection and have no authority to enter orders or conduct the proceedings. Under these circumstances, no sanction less than dismissal of Poraths' claims and entry of judgment against them will have any effect.

### Conclusion

After due consideration of the Poraths' misconduct in this case, the harm caused to opposing parties and the Court, and after considering the factors set out in Ehrenhaus and Meade, the Court determines that the appropriate sanction is striking the Poraths' pleadings and defenses, entry of

7

judgment in favor of the United States on the tax claims, and entry of judgment in favor of Wells

Fargo on its claims against the Poraths.

## **Recommendation**

The Court recommends that the trial judge enter an order granting judgment to the United

States on its Complaint; dismissing Poraths' counterclaim in Cause No. CIV 11-901; and granting

judgment to Wells Fargo on its Complaint for Foreclosure in Cause No. CIV 11-1145.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge